# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NATALIE LIGHT DOUGLASS, | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | |
| v. | : | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration | : | NO. 10-1152 |
| Defendant. | : | |

## MEMORANDUM ON REQUEST FOR REVIEW

**Baylson, J.**                                                                                                                    **November 30, 2010**

Plaintiff Natalie Light Douglass ("Douglass") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383(c). (ECF No. 3.) Pending before the Court are Douglass's Complaint (ECF No. 3) and her Brief and Statement of the Issues in Support of Request for Review (ECF No. 10). After careful and independent consideration of the matter, and for the following reasons, the Court will **grant** Douglass's request for review, vacate the decision of the Administrative Law Judge ("ALJ"), and remand for further proceedings.

## I. Factual and Procedural Background

Douglass filed for DIB and SSI benefits on October 9, 2007. (A.R. 117.) She claimed a disability onset date of June 15, 2007, at which time she was sixty-two years old. (A.R. 117,

121.) Douglass is now sixty-five years old and receives retirement benefits. (A.R. 64-66.) Douglass's relevant work experience is as a teacher of the emotionally impaired. (A.R. 34.) She has a college degree in mathematics. (A.R. 24.) She claims disability due to major depressive disorder. (A.R. 26, 121, 202.)

On January 17, 2008, the SSA notified Douglass that her applications for benefits had been denied. (A.R. 44-47, 48-51.) Douglass then timely requested a hearing before an ALJ, which was held on April 22, 2009 in Philadelphia, Pennsylvania. (A.R. 20.) At the hearing, Douglass claimed she suffers from atypical depression, for which she takes psychiatric medication. (A.R. 25-26.) She acknowledged she was fired from her most recent teaching position because she has "a problem dealing with those . . . kids and . . . I went in and had a fight with the principal." (A.R. 25.) She was also fired from her prior teaching jobs because "I have a big mouth and I didn't go along with what they wanted done. If I thought something was foolish, I told them." (A.R. 30.)

She testified that "concentrating's very difficult [and] there was also the added stress of having a school where no rules were enforced." (A.R. 26.) With regard to interacting with others, Douglass testified that she is "not the easiest person to get along with because I get to the point where I just say what I think." (A.R. 28.) She testified that she can drive, prepare her own meals, do laundry, and go food shopping. (A.R. 23, 28-29.)

The vocational expert ("VE") then testified and identified Douglass's past relevant work as a teacher for the emotionally impaired, which is skilled work with light exertion. (A.R. 34.) The ALJ then constructed a hypothetical with no exertional limitations, but with moderate limitations in concentration and attention, limited to simple repetitive work with only occasional

interaction with the public, supervisors, and co-workers. (A.R. 34-35.) The VE testified that Douglass would not be able to perform her past relevant work, but there were several positions she could perform in the national or regional economy, including assembler of motor vehicle parts, laundry laborer, and assembler of plastic hospital equipment. (A.R. 35.) Notably, the VE then testified that, assuming a marked limitation in social functioning that precludes working in close proximity with others, or the limitations identified by Douglass's therapist,[1] there would be no available jobs for Douglass. (A.R. 35-36.)

On May 8, 2009, the ALJ issued an opinion denying Douglass's claims for benefits. (A.R. 10-19.) The ALJ found that Douglass has not engaged in substantial gainful activity since the alleged onset date of June 15, 2007. (A.R. 12.) She also found that Douglass suffers from a severe impairment, i.e. a depressive disorder, her impairment does not meet or medically equal the listed impairments, but she does have some work limitations. (A.R. 12-14.) The ALJ concluded that Douglass has

> the residual functional capacity to perform a full range of work at all exertional levels

---

[1] Douglass met with Nancy Langan, M.S., one-on-one on an almost weekly basis from April 9, 2008 to March 25, 2009. (See A.R. 268-91; 310-37 (Langan's case notes from therapy sessions).) Langan opined that Douglass experiences extreme limitations for: using judgment; interacting with supervisors; dealing with work stresses; maintaining attention or concentration; understanding, remembering, and carrying out complex job instructions and detailed, but not complex job instructions; behaving in an emotionally stable manner; and relating predictably in social situations. (A.R. 263-64.) She also reported that Douglass has marked limitations for following work rules. (A.R. 263.) Further, Langan reported that Douglass is moderately limited in: relating to co-workers; understanding, remembering, and carrying out simple job instructions; and demonstrating reliability. (A.R. 263-64.)

"Extreme" limitations are defined as "[n]o useful ability to function in this area (inability more than fifty percent of the time)." (A.R. 262.) "Marked" limitations are defined as "[v]ery significant limitation in sustaining and/or repeating functioning in this area (inability up to fifty percent of the time)." (A.R. 262.) "Moderately limited" is defined as "[s]ignificant limitation in sustaining and/or repeating functioning (inability twenty-five percent of the time)." (A.R. 262.)

> but with the following non-exertional limitations: [Douglass], secondary to moderate limitations in concentration and attention, retains the ability to perform simple, repetitive work with, (secondary to moderate limitations in social functioning), no more than occasional interaction with the general public, co-workers or supervisors.

(A.R. 14.) Finally, although the ALJ conceded Douglass could not perform her past relevant work and that her job skills do not transfer to other occupations within the defined residual functional capacity, the ALJ found there are jobs available in significant numbers that Douglass can perform. (A.R. at 17-18.) Therefore, the ALJ ultimately found her "not disabled." (A.R. 19.)

In the opinion, the ALJ afforded no weight to the opinion of Douglass's therapist, Nancy Langan, M.S., concluding Langan's "opinion is not supported by the mental health evidence of record including [her] counseling notes [and she] is not an acceptable medical source according to Social Security Regulations." (A.R. 16; see also A.R. 261-65.)

On September 19, 2009, Douglass appealed the ALJ's decision to the Appeals Council. (A.R. 157-62.) The Appeals Council denied Douglass's request for review, rendering the ALJ's decision the Commissioner's final determination. (A.R. 1.) Douglass then filed a complaint in this Court seeking review of the Commissioner's final determination. (ECF No. 3.)

## II. Jurisdiction and Standard of Review

### A. Jurisdiction

This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). See 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party . . . may obtain review of such decision by a civil action commenced within sixty days after the

mailing to h[er] of notice of such decision . . . ."); (see also A.R. 1 (informing Douglass of final determination)). Venue is proper in this Court pursuant to § 405(g).

### B. Standard of Review

District courts may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the matter for rehearing. 42 U.S.C. § 405(g). This Court's role in reviewing the ALJ's decision is to determine whether there is substantial evidence to support the Commissioner's decision. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); see 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); id. § 1383(c)(3) ("The final determination of the Commissioner . . . shall be subject to judicial review . . . to the same extent as the Commissioner's final determinations under [§ 405].").

Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); see also Jones, 364 F.3d at 503 (stating that substantial evidence is less than a preponderance of the evidence but more than a scintilla). To determine whether substantial evidence exists, the Court reviews the record as a whole. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Nevertheless, the Court retains plenary review of all legal issues. Id. (citing Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995) (per curiam)).

## III. Discussion

### A. Legal Standards

Social security benefits may be paid to "disabled" persons. 42 U.S.C. § 1382. To establish a disability, a claimant "must demonstrate some medically determinable basis for an

impairment that prevents h[er] from engaging in any substantial gainful activity for a statutory twelve-month period." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (quotation marks omitted). "A person is disabled 'only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 469 (3d Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(A)).

When assessing whether an individual has a disability under the Act, the ALJ follows the following five-step sequential analysis: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. § 404, subpart P, appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet the previous prong, the Commissioner considers the claimant's residual functional capacity to determine whether she can perform any past relevant work – if she can, the claimant will be found not disabled; and (5) if the claimant cannot perform any of his or her past relevant work, the Commissioner will consider the claimant's residual functional capacity, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. Schaudeck, 181 F.3d at 431-32; 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The claimant bears the burden of proof for steps one, two, and four and the burden shifts to the Commissioner for the fifth step – no party bears the burden for step three. Rivera v.

Comm'r of Soc. Sec., 164 F. App'x 260, 262 (3d Cir. 2006). Furthermore, if at any step the Commissioner finds the claimant is disabled or not disabled, the inquiry is at an end. Kinney, 244 F. App'x at 469 (citing 20 C.F.R. § 404.1520(a)(4)). The ALJ denied Douglass's claim at the fifth step, concluding that Douglass "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (A.R. 19.)

> In evaluating a claim for benefits, the ALJ must consider all of the evidence in the case. The ALJ must "explicitly" weigh all relevant, probative, and available evidence. Moreover, the ALJ must provide some explanation for a rejection of probative evidence that would suggest a contrary disposition. Although the ALJ may properly accept some parts of the medical evidence and reject other parts, the ALJ must still consider all the evidence and give some reason for discounting the evidence [s]he rejects. In the absence of such an indication, the reviewing court cannot determine whether significant probative evidence was deemed not credible or whether it was simply ignored.

Weber v. Massanari, 156 F. Supp. 2d 475, 483 (E.D. Pa. 2001) (citations omitted). Further, when there is a conflict in the evidence, the ALJ is entitled to decide which evidence to credit, but "cannot reject evidence for no reason or the wrong reason." See Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993). "[T]he ALJ must indicate in h[er] decision which evidence [s]he has rejected and which [s]he is relying on as the basis for h[er] finding. This explanation provides [the Court] with a basis on which to assess whether significant probative evidence was not credited or was simply ignored." Schaudeck, 181 F.3d at 433 (citations, quotation marks, and alteration omitted).

### B. Parties' Contentions

Douglass claims the ALJ committed reversible error when she rejected the opinion of Douglass's mental health therapist because (1) the opinion was not supported by the record evidence, including the therapist's own notes, and (2) the therapist was not an "acceptable

7

medical source." Douglass contends that the first basis is insufficient because the ALJ failed to cite any supporting record evidence. She also argues that the record evidence is consistent with the therapist's opinion. Douglass contends that the second basis for rejecting the opinion is improper under Social Security Ruling 06-03p, which instructs ALJs how to evaluate opinions from "other sources." (ECF No. 10.)

The Commissioner responds that substantial evidence supports the conclusion that Douglass is "not disabled." Further, the Commissioner contends that the ALJ appropriately concluded that Langan is not an "acceptable medical source" and that her opinion is unsupported by the record. The Commissioner then highlights several facts from the record in support of this argument, including that Langan's notes reveal limited treatment, Douglass engaged in employment, and Douglass planned to start her own business and attend training sessions. (ECF No. 11.)

Douglass responds by arguing that the ALJ failed to cite any examples for her conclusion of inconsistency and the Commissioner cannot provide that reasoning after the fact, although the Commissioner's examples only further support Douglass's claimed disability. (ECF No. 12.)

### C.    Analysis

Former Commissioner Jo Anne B. Barnhart promulgated Social Security Regulation ("SSR") 06-03p in August 2006 to "clarify how [the SSA] consider[s] opinions from sources who are not 'acceptable medical sources.'" SSR 06-03p, 71 Fed. Reg. 45,593 (Aug. 9, 2006). Acceptable medical sources include, <u>inter alia</u>, licensed physicians and licensed or certified psychologists. <u>Id.</u> (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)). "Other sources" include medical sources who are not "acceptable medical sources" and non-medical sources. <u>Id.</u> (citing

20 C.F.R. §§ 404.1513(d), 416.913(d)). Other medical sources include, inter alia, licensed clinical social workers and therapists. Id. (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)).

In this context, this case raises an issue that apparently has not been the subject of a Third Circuit opinion – and no other Circuit opinion with similar facts has been located – to what extent must an ALJ discuss a claimant's reliance on a medical source who is not an "acceptable medical source" and when can such evidence be deemed sufficient and persuasive enough to warrant the ALJ finding limitations severe enough to justify a finding of "disabled." It is clear that "[i]nformation from [not acceptable medical sources] cannot establish the existence of a medically determinable impairment[, but] may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Id. at 45,595. The regulations do not specify when such evidence is sufficient for finding functional limitations that would justify a finding of "disabled."

Because "medical sources who are not 'acceptable medical sources[]' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists[, o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects." Id. The opinions of these sources should be considered along with the other relevant evidence in the file. Id. Further, the factors applied to evaluate the medical opinions from "acceptable medical sources" represent basic principles that apply to the opinions from medical sources who are not "acceptable medical sources." Id. These factors include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;

9

- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

Id. Although each factor for weighing the opinion evidence will not apply in every case, the evaluation of the opinion depends on the particular facts in each case. Id. at 45,595-96. Finally, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a . . . subsequent reviewer to follow the [ALJ's] reasoning, when such opinions have an effect on the outcome of the case." Id. at 45,596.

In this case, the ALJ offered the following analysis of Langan's assessment:

[Douglass's] therapist offered the opinion on January 15, 2009, that [Douglass] has many marked or extreme limitations resulting from her mental health impairment. This opinion is not supported by the mental health evidence of record including the counseling notes made by [Douglass's] therapist. [Douglass's] counselor is not an acceptable medical source according to Social Security Regulations. Accordingly, I find no basis upon which to afford any weight to the opinion offered by [Douglass's] counselor in regard to any work related limitations.

(A.R. 16 (citations omitted).) This is the entire substance of the ALJ's discussion of the therapists's opinion. Nowhere in this discussion does the ALJ cite to SSR 06-03p, let alone identify the factors cited above for evaluating an opinion of a medical source who is not an "acceptable medical source." The ALJ has offered no record citations to permit this Court to review her decision for substantial evidence, in contravention of the mandate in SSR 06-03p to "ensure that the discussion of the evidence in the determination or decision allows a . . . subsequent reviewer to follow the [ALJ's] reasoning." SSR 06-03p, 71 Fed. Reg. at 45,596.

Moreover, after a thorough review of the record, this Court concludes that the ALJ's conclusion regarding Langan's opinion is not supported by substantial evidence.

The ALJ rejects Langan's opinion for two reasons: (1) she is not an acceptable medical source, and (2) the opinion lacks support from the mental health evidence in the record, including Langan's own notes. First, the ALJ is not permitted to outright reject the therapist's opinion solely because she is not an acceptable medical source. Rather, the ALJ is required to perform the analysis mandated by SSR 06-03p. See Sykes v. Apfel, 228 F.3d 259, 271 (3d Cir. 2000) (asserting that social security rulings are binding on all components of the SSA) (citing Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984)).

Second, the ALJ's conclusion that the therapist's opinion lacks support is not supported by substantial evidence. For example, in her first session, Douglass declined to develop a therapy plan with her therapist because she was "too overwhelmed" and "angry," and declined to "indulge rush to judgement about [her] care." (A.R. 337.) She also declined to attend out-patient group therapy sessions because "I'm not like those people." (A.R. 290.) When she disclosed conflict with co-tenants, Langan reported that Douglass had "difficulty focusing on her role in the conflict and what it might mean to her housing," (A.R. 284), and Douglass eventually decided to move out because "I can't stand how they act like they're everything," (A.R. 282).

After she started working as a math teacher at an alternative high school, Douglass informed her therapist that she "doesn't care for the administrators or other teachers." (A.R. 282.) Just one week later, and less than one month after starting the teaching job, Douglass reported a conflict with her supervisor and the school administrators. (A.R. 281.) She also noted that although she was getting along with her new house-mate, there were some things which were

getting on her nerves. (A.R. 280.) Just another week later, it appears both conflicts escalated: Douglass reported a "sudden conflict" with her new house-mate and her intention to move out, and a conflict with the school principal who told her to improve her self-management to retain her job. (A.R. 279.) According to Douglass, these issues were "their problem[s]." (A.R. 279.)

These problems at work and home persisted throughout subsequent sessions, culminating in termination from her job and finding alternative living arrangements on several occasions. (E.g., A.R. 269, 272, 273, 277, 278.) Before she was fired from her job, she admitted she "t[old] off a little bastard" and called the child a "future trash collector." (A.R. 277.) Langan noted that Douglass did not seem to take responsibility for her termination, claiming "everyone always get[s] me" and "they're all out to destroy me." (A.R. 269.) There is also significant evidence in the notes that Douglass has recurring problems interacting with other people in routine daily interactions. (E.g., A.R. 268-70, 273, 275, 276-79, 281, 310, 313-16.)

In addition, the remaining mental health evidence in the record also supports, rather than conflicts with, Langan's assessment. In April 2008, Douglass refused to participate in group therapy because "I just don't give a damn about those people" and was verbally aggressive toward the other patients. (A.R. 302-03.) Otherwise, three psychiatric evaluations disagree about whether her judgment and insight are adequate, fair, or poor. (A.R. 295, 297, 300.)

After reviewing Langan's notes, this Court finds that without detailed discussion of the entire record, the ALJ's cursory rejection of Langan's assessment was improper. Langan's notes describe an individual who has significant problems interacting with others in any situation, including social and work-related situations, which may warrant the ALJ to agree with Langan's conclusions regarding Douglass's limitations.

Although the Commissioner's brief offers other evidence from the record in support of the ALJ's rejection, the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)); Keiderling v. Astrue, No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008) (Buckwalter, S.J.) ("[I]t is well-established that the ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision; the Commissioner may not offer a post-hoc rationalization.") (quotation marks and alteration omitted). The ALJ's decision did not cite the examples that the Commissioner's brief cites to this Court, but instead referred only to the "mental health evidence, including the counseling notes made by [Douglass's] therapist," which is insufficient to affirm the rejection. (A.R. 16.)

This Court finds support for its conclusion within this District in a case which reviewed a similarly insufficient ALJ decision. Judge Buckwalter, in Keiderling v. Astrue, approved a Magistrate Judge's recommendation of remand for reconsideration of a psychotherapist's notes and assessments. 2008 WL 2120154, at *4. In Keiderling, the ALJ afforded the therapist's opinions minimal weight because she was not an "acceptable medical source" and her examinations were "consistently unremarkable and did not disclose totally work-preclusive limitations." Id. at *5 (alteration omitted). These conclusions, however, lacked sufficient support in the record for several reasons. First, the ALJ failed to note that the therapist observed the claimant every one to two weeks for at least six months, giving the therapist the benefit of long-term observation of the claimant's mental condition. Id. Second, the ALJ's "selective interpretation" of the therapist's notes were contrary to what the notes actually revealed. Id.

13

Finally, the record evidence from "acceptable medical sources" supported the therapist's opinions. Id. at *6.

The circumstances of Keiderling are very similar to those presently before the Court. In this case, the ALJ rejected the opinion of a not "acceptable medical source" in part because of the individual's status. See id. ("[T]he ALJ's decision to blanketly reject [therapist's] notations and assessments based primarily on the fact that she is not an 'acceptable medical source' is not supported by substantial evidence."). The ALJ in this case also failed to note that Langan treated Douglass almost every week for a year. See id. at *5; see also Magno v. Astrue, No. 08-1543, 2010 WL 322144, at *5 (W.D. Pa. Jan. 27, 2010) (noting ALJ failed to acknowledge regular treatment). Further, unlike in Keiderling where the ALJ selectively interpreted the record, the ALJ in this case offered no interpretation, selective or comprehensive. Compare Keiderling, 2008 WL 2120154, at *5; with (A.R. 16). Finally, as previously noted, there is additional mental health evidence in the record which supports Langan's assessment. See Keiderling, 2008 WL 2120154, at *6 (noting medical evidence in record supported therapist's opinions).

Accordingly, the final determination that Douglass is "not disabled" is vacated.

### D.   Remand is Appropriate

Douglass requests an award of benefits or, in the alternative, remand to the SSA for further proceedings. A district court may award benefits "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." See Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984). In this case, the ALJ opted to reject Langan's assessment for unsupported reasons. Therefore, it is appropriate to remand the matter for the ALJ to comply

with SSR 06-03p and either more fully develop its reasoning for rejecting the assessment, or assign weight to the report and reconsider her ultimate decision on disability. On remand, the ALJ should consider in particular the VE's testimony that assuming Langan's limitations, there are no available positions in the national or regional economy for Douglass. (See A.R. 35-36.)

## IV. Conclusion

For the foregoing reasons, Douglass's request for review will be **granted**. The ALJ's decision is vacated and the matter will be remanded for further proceedings. An appropriate order will follow.

O:\Todd\10-1511 Douglass v. Astrue\Memo on Request for Review - draft 5.wpd